IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ROLEX WATCH USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANTONIO GUS TRUJILLO, a/k/a CHINO GUS ANTONIO TRU, d/b/a CHINO'S, <br><br> Defendant. | 2:23-CV-101-Z-BR |

## ORDER ON DEFAULT JUDGMENT

Before the Court is Plaintiff's Motion for Judgment ("Motion") (ECF No. 20). Having considered the Motion, pleadings, and relevant law, the Motion is **GRANTED**. Plaintiff is entitled to default judgment, an injunction, $14,000,000.00 in statutory damages, attorney's fees and costs.

### BACKGROUND

Plaintiff is the exclusive distributor and warrantor of Rolex watches in the United States. ECF No. 20 at 3–4. Plaintiff owns several registered trademarks and tradenames, including: "Rolex," "Submariner," "Day-Date," "Crown Device" and the Coronet logo. *Id.* at 3–4. These luxury timepieces — "bling bling in the vernacular"[1] — are identifiable by their distinctive designs, marks, and reputation for high quality craftmanship. *Id.* at 9.

Defendant, who goes by various monikers, including "Chino Tha Hu$tla," is alleged to have owned and operated an Amarillo-based retail store called Chino's, and to have maintained a storage unit where he warehoused merchandise. *See* ECF No. 1 at 2–3, 7. Befitting his nickname, Defendant advertised and dealt in counterfeit goods, including fake and "iced out" Rolex watches priced between $120.00 and $275.00. *Id.* at 5–6. Defendant was not a licensed Rolex distributor.

---

[1] *Mannion v. Coors Brewing Co.*, 377 F.Supp.2d 444, 447 (S.D.N.Y. 2005).

Plaintiff brought claims for violations of Title 15 United States Code Section 1114 (Trademark Counterfeiting and Infringement). *See id.* at 10–14. Moreover, Plaintiff alleges that Defendant's violations were "willful" as defined by Section 32 of the Lanham Act. *Id.* On June 28, 2023, Plaintiff served Defendant with summons and copies of the Complaint. ECF No. 17 at 2. Defendant never answered. *Id.* Plaintiff therefore requested entry of default against Defendant, and the Clerk entered default on August 2, 2023. ECF No. 18. As of today, Defendant has not appeared. *See United States v. McCoy*, 954 F.2d 1000, 1003 (5th Cir. 1992) (defining "appearance" as any indication of intent to pursue a defense, including physically appearing or filing a document).

Because Defendant was served and default entered against him, Plaintiff now seeks entry of Final Default Judgment and a permanent injunction. ECF Nos. 20, 21 at 17–28. Specifically, Plaintiff seeks $14,000,000.00 in statutory damages, reasonable attorney's fees, costs of action, and a permanent injunction to prevent future infringement. *See* ECF No. 21 at 8–9, 17.

### LEGAL STANDARD

The Court may enter a default judgment against a party when that party fails to plead or otherwise respond to a plaintiff's complaint within the requisite period. FED. R. CIV. P. 55(b). "It is a three-step procedure requiring (1) the defendant's default, (2) the entry of default, and (3) the issuance of a default judgment." *Bank of N.Y. Mellon Tr. Co., N.A. v. Cook*, 2020 WL 13469391, at *2 (N.D. Tex. Jan. 7, 2020) (citing *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)). By his default, Defendant "admits [P]laintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Const. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal marks omitted).

The final step — issuance of default judgment — itself entails three parts. First, whether entering default judgment is appropriate; second, whether the plaintiff's complaint is adequate; and third, proving damages.

As to propriety, courts consider six "non-exhaustive factors: (1) whether default was caused by a good faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default judgment; (4) whether there are material issues of fact; (5) whether the grounds for a default judgment are clearly established; and (6) whether the Court would be obligated to set aside the default on the defendant's motion." *Branch Banking and Tr. Co. v. Randhawa Ventures, Inc.*, No. 3:19-CV-1426-M, 2019 WL 7879732, at *1 (N.D. Tex. Sept. 20, 2019) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). Additionally, default judgment cannot be imposed against a minor, incompetent, or one in active military service. 50 U.S.C. § 3931; FED. R. CIV. P. 55(b)(2).

Because "a defendant's default does not in itself warrant the court in entering default judgment," the Court must also scrutinize the sufficiency of the pleadings under Rule 8(a)(2) of the Federal Rules. *Nishimatsu*, 515 F.2d at 1206; *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubted in fact).'" *Wooten*, 788 F.3d at 490 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[2]

If a plaintiff satisfies the first two requirements, it must then prove the amount of its damages. *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir.

---

[2] "However, the Fifth Circuit emphasized that the standard is not to be equated with the plausibility standard applicable in a motion to dismiss." *Randhawa Ventures*, 2019 WL 789732, at *1 n.1 (citing *Wooten*, 788 F.3d 490, 498 n. 3 (5th Cir. 2015) ("A defendant ordinarily must invoke Rule 12 in order to avail itself of that rule's protections, and we decline to import Rule 12 standards into the default-judgment context.") (internal marks omitted)).

1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Plaintiff has the burden of "establishing the necessary facts" to explain the figure presented to the Court. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). The calculation may rest upon detailed affidavits with no hearing required if it can be made "with certainty by reference to the pleadings and supporting documents." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993).

ANALYSIS

**A. Jurisdictional and other statutory requirements are met here.**

The Court has subject matter jurisdiction because 15 U.S.C. Section 1114 presents a federal question. *See* 15 U.S.C. § 1121; 28 U.S.C. § 1338; 28 U.S.C. § 1331. Plaintiff has established that Defendant was properly served, and the District Court entered default. *See* FED. R. CIV. P. 55(a); ECF Nos. 20, 18. Plaintiff has attested that Defendant is neither a minor, incompetent, nor in military service. *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931; ECF No. 17 at 2. Therefore, the Court finds that Plaintiff has satisfied these requirements.

**B. Plaintiff alleges violations of 15 U.S.C. § 1114.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim showing that [Plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiff brought two claims against Defendant: Trademark Counterfeiting and Trademark Infringement. *See* ECF No. 1 at 10–14. Liability under a default judgment exists "only so far as it is supported by well-pleaded allegations." *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998). Therefore, Plaintiff must satisfy the default judgment requirements for both claims independently. *See Wooten*, 788 F.3d at 500. The Court finds that Plaintiff has done so.

### 1. Trademark Counterfeiting Claim

To prevail on a claim for trademark counterfeiting, Plaintiff is required to plead that Defendant: (1) infringed on a registered trademark in violation of Section 1114(1)(a); and (2) intentionally used the trademark knowing that it was a counterfeit. *See Transparent Energy LLC v. Premier Mktg. LLC*, No. 3:19-cv-03022-L, 2020 U.S. Dist. LEXIS 145836, at *20 (N.D. Tex. July 28, 2020) (internal marks omitted). The Court is satisfied that Plaintiff has met its burden. Plaintiff details Defendant's unauthorized use of the Rolex Trademarks for merchandise not produced, owned, or authorized by Plaintiff. ECF No. 1 at 5–10. Further, Plaintiff alleges that this counterfeiting was done willfully. *Id.* There can be little doubt that Defendant knew he dealt in nongenuine goods. *See, e.g., id.* at 57–76 (listing prices as low as $80). Accordingly, the Court finds that Plaintiff has met its pleading burden for the trademark counterfeiting claim.

### 2. Trademark Infringement Claim

To prevail on a claim for trademark infringement under the Lanham Act, Plaintiff must show: (1) it possesses a legally protectable trademark, and (2) Defendant's use of that trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *See Streamline Prod. Sys. v. Streamline Mfg.*, No. 16-20046, 2017 U.S. App. LEXIS 6496, at *12 (5th Cir. Mar. 16, 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

Plaintiff proffered evidence that it possesses a legally protectable trademark for fourteen relevant Rolex trademarks. ECF No. 1 at 4, 20–55 (containing Trademark Registration records from the U.S. Patent and Trademark Office). Further, Plaintiff's uncontroverted allegations and evidence of Defendant's unauthorized use of the Rolex Trademarks on and in conjunction with the counterfeit goods establish that there is likely confusion regarding source, affiliation, or

sponsorship of these products. For instance, Defendant displayed approximately forty-five counterfeit Rolex watches in a case engraved with "Chino Tha Hu$tla" alongside signs bearing the Rolex name, Coronet, and other trademarks. *See* ECF No. 1 at 7, 78. Therefore, the Court finds that Plaintiff has adequately pleaded its trademark infringement claim.

### C. Plaintiff is entitled to statutory damages, costs, and attorney's fees.

Plaintiff seeks alternatives measures of damages: (1) all gains, profits, and advantages Defendant has received from selling the infringing products trebled as provided by 15 U.S.C. Section 1117; or (2) statutory damages pursuant to Section 1117(c) for each trademark that Defendant willfully counterfeited and infringed. ECF No. 1 at 14–16. As relevant to damages, "[w]here the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary." *James*, 6 F.3d at 310.

"A default judgment does not establish the amount of damages." *Crawford v. Lee*, No. 3:10-CV-1499-L, 2011 WL 2115824, at *4 (N.D. Tex. May 24, 2011). "A defendant's default concedes the truth of the [well-pleaded] allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of W. v. H&G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). It is Plaintiff's burden to marshal competent evidence in support of damages. *See Halff Assocs., Inc. v. Warner Pac. Props. L.L.C.*, No. 3-08-CV-574-B, 2008 WL 3874673, at *2 (N.D. Tex. Aug. 13, 2008).

Generally, courts grant default judgment and determine damages without an evidentiary hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo*, 157 F.3d at 414 (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). Here, the Court concludes that a hearing is not necessary on the issue of damages under Section 1117(c) because

it awards Plaintiff statutory damages calculated upon the identified number of different trademarks infringed by Defendant. While there is insufficient evidence in the record to calculate the amount of benefit Defendant derived from the infringing products with exactitude, Plaintiff requests statutory damages in the alternative. *See* ECF No. 1 at 16. Whether to grant an award "upon proven profits and damages or one estimated within the statutory limits" is left to "the trial court in its sound exercise of judicial discretion." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233–34 (1952); *James*, 6 F.3d at 310 ("The rule explicitly grants the district court wide latitude" when determining damages and whether to hold an evidentiary hearing.").

When rendering judgment in cases involving counterfeit goods, "courts have considered the size of a defendant's counterfeiting operations and have been inclined to award the statutory maximum where a 'large, commercial quantity' is involved." *Philip Morris USA Inc. v. Lee*, 547 F.Supp.2d 685, 695 (W.D. Tex. 2008) (quoting *Phillip Morris USA Inc. v. Marlboro Express*, CV-03-1161, 2005 U.S. Dist. LEXIS 40359, at *21 (E.D.N.Y. Aug. 26, 2005)). The purpose of the Lanham Act's damages provision is to compensate plaintiffs and deter the use of counterfeit marks. *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D.P.A. 2002) (citing *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054, at *2 (S.D.N.Y. June 5, 2002)). Thus, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers" and "would fall short of an effective sanction." *F.W. Woolworth Co.*, 344 U.S. at 233. Unsurprisingly, Rolex has received large awards in similar cases. *See e.g.*, *Brown*, 2002 U.S. Dist. LEXIS 10054, at *2 (awarding $1,000,000 statutory maximum when Rolex sought the maximum statutory damages); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359 (DLC) (FM), 2002 U.S. Dist. LEXIS 6657, at *5–6 (S.D.N.Y. Apr. 17, 2002) (awarding $500,000 for internet sales).

As to fees and costs, Plaintiff has provided the Court with sufficient documentation. *See* ECF No. 21 at 23–25, 107–115. Next considering Defendant's social media advertisements, capable of expanding his illicit business far beyond the brick-and-mortar, and the volume of seized counterfeit products, the Court finds that maximum statutory damages are necessary to compensate Plaintiff and deter Defendant — and others — from attempting to profit from the illegal use of Rolex Trademarks. In all, Plaintiff identifies at least fourteen Rolex Registered Trademarks that Defendant infringed. *See* ECF No. 20 at 8. Based on that number, which likely underestimates the true scope of Defendant's infractions, the Court **ORDERS** that Plaintiff may recover the following damages, fees, and costs:

- $1,000,000.00 per violation, for a sum of $14,000,000.00 in statutory damages pursuant 15 U.S.C. § 1117(c);

- Attorney's fees in the amount of $14,162.00 pursuant to 15 U.S.C. §§ 1117(a) and (b);

- Costs in the amount of $889.29 pursuant to 15 U.S.C. § 1117(a);

- Pre-judgment and post-judgment at the highest rate allowed by law as of the date of this Judgment.[3]

### D. Plaintiff is entitled to injunctive relief.

Plaintiff also seeks injunctive relief from the Court. *See* ECF No. 1 at 14–16. The Court has authority to grant a permanent injunction under 15 U.S.C. Section 1116. To grant injunctive relief, the Court must find: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court finds that all requirements have been established.

---

[3] *See* Post-Judgment Interest Rates, https://www.txnd.uscourts.gov/post-judgment-rates.

Because Defendant admits the allegations as fact by his default, a rebuttable presumption of irreparable harm arises. *See Nishimatsu*, 515 F.2d at 1206; 15 U.S.C. § 1116. Additionally, damage to Plaintiff's goodwill and market value qualify as irreparable harm for purposes of injunctive relief. *See e.g., Lason Servs. v. Rathe*, No. 3:02-CV-2110-D, 2003 U.S. Dist. LEXIS 3947, at *25 (N.D. Tex. Mar. 14, 2003) (internal marks omitted). Next, Defendant's default and failure to appear renders a true accounting for compensatory damages unascertainable or difficult to ascertain, so monetary damages alone will be inadequate. *See Whirlpool Corp. v. Bumperr Ltd.*, No. 2:21-cv-00432-JRG-RSP, 2022 U.S. Dist. LEXIS 233868, at *5 (E.D. Tex. Nov. 22, 2022). Next, permitting Defendant to continue in the prohibited trade will continue to harm Rolex's market share, decrease perceived value and price potential, and harm the brand's reputation. *See id.* There is no legitimate harm to the Defendant, so equitable relief is warranted. Lastly, the Court must consider the public interest, and the public interest is best served by protecting the use of valid trademarks. *See id.* at *6. Accordingly, the Court finds a permanent injunction is both proper and warranted. *See Rolex Watch U.S.A., Inc. v. Mills*, No. 3:12-CV-061-L, 2012 WL 5903782, at *4 (N.D. Tex. November 26, 2012) (granting substantially similar permanent injunction); *Rolex Watch U.S.A., Inc. v. Zolotukhin*, 3:14-CV-2867-L, 2016 WL 1258479, at *4 (N.D. Tex. March 31, 2016) (same); *see also T-Mobile USA Inc. v. Shazia & Noushad Corp.*, 3:08-CV-341, 2009 WL 2003369, at *4 (N.D. Tex. July 10, 2009) ("[A] permanent injunction is an appropriate remedy upon the entry of default judgment.").

Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court **ORDERS** that Defendant and his agents, servants, employees, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from the following:

- Using, manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the marks of Rolex, or any colorable imitation thereof, including without limitation, the following Rolex trademarks registered in the United States Patent and Trademark Office ("Rolex Marks"):

| Registration Number | Description | Issue Date |
|---|---|---|
| 733,081 | COSMOGRAPH | 06/19/1962 |
| 657,756 | 👑 CROWN DEVICE | 01/28/1958 |
| 674,177 | DATEJUST | 02/17/1959 |
| 831,652 | DAY-DATE | 07/04/1967 |
| 2,221,145 | DAYTONA | 03/21/2000 |
| 4,378,540 | DEEPSEA | 08/06/2013 |
| 683,249 | GMT-MASTER | 08/11/1959 |
| 2,985,308 | GMT-MASTER II | 08/16/2005 |
| 1,105,602 | OYSTER PERPETUAL | 11/07/1978 |
| 101,819 | ROLEX | 01/12/2015 |
| 4,280,289 | SKY-DWELLER | 01/22/2013 |
| 860,527 | SEA-DWELLER | 11/19/1968 |
| 1,782,604 | SUBMARINER | 07/20/1993 |
| 1,749,374 | YAUGHT-MASTER | 01/26/1993 |

- Displaying or using any of the Rolex Marks to advertise or promote the sale of any goods, products, or services.

- Displaying or using any of the Rolex Marks in the identification or operation of any retail store, including Chino's and any online or social media counterpart or equivalent, or any means of commerce.

- Making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendant, Chino's, any online or social media counterpart or equivalent, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, licensed, sponsored, authorized, approved or endorsed by Rolex.

- Using or continuing to use the Rolex Registered Trademarks or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name, or as a keyword, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by Rolex;

- Using any e-mail addresses to offer for sale any nongenuine products bearing counterfeits of the Rolex Registered Trademarks;

- Secreting, destroying, altering, removing or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting or displaying of all unauthorized products which infringe the Rolex Registered Trademarks; and

- Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein.

Further, pursuant to the Court's authority under 15 U.S. Code Section 1116(a), the Court **ORDERS** that:

- Defendant shall, within ten (10) days of judgment, take all steps necessary to remove any and all websites, social media pages, and/or posts offering for sale any merchandise bearing the Rolex Registered Trademarks, or other similar and infringing marks;

- Within thirty (30) days of service of this Judgment, Defendant shall file with the Court and serve Rolex with a sworn statement setting forth in detail the manner and form in which he has complied with this Judgment, including its injunctive provisions;

- To the extent that Defendant has any of the following items in his possession, custody, or under his control, he shall deliver such items to Rolex (c/o Gibney, Anthony & Flaherty, LLP, Attn: Ms. Maja Szumarska, 650 5th Avenue, New York, NY 10022) within thirty (30) days of service of this Judgment for destruction pursuant to 15 U.S.C. Section 1118: (1) unauthorized materials bearing any of the Rolex Registered Trademarks in association with unauthorized goods or services; and (2) the means for producing such unauthorized materials.

### CONCLUSION

The Court **GRANTS** the Motion for default judgment against Defendant. The Court also **GRANTS** Plaintiff's requests for statutory damages, injunctive relief, attorney's fees reasonably incurred, and reasonable costs, as described herein.

**SO ORDERED.**

November 16, 2023

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE